D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMBAC ASSURANCE CORPORATION,

                           Plaintiff,

   -against-

EMC MORTGAGE CORPORATION,

                           Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**10-MC-010 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Ambac Assurance Corporation ("Ambac") is a plaintiff in an action pending in the United States District Court for the Southern District of New York against EMC Mortgage Corporation ("EMC"). See Ambac Assurance Corp. v. EMC Mortgage Corp., No. 08-CV-9464 (RMB) (S.D.N.Y.). Ambac filed this motion seeking an order compelling nonparty American Home Mortgage Investment Corporation ("American Home") to produce and/or permit inspection of documents responsive to a subpoena duces tecum served in the Eastern District of New York in connection with that case.

I.    **BACKGROUND**

    A.    **The Underlying SDNY Action**

Ambac is an insurance company that insured mortgage-backed securities purchased by investors from EMC. EMC securitized mortgages that it either originated itself or purchased from other originators. (Compl. ¶ 1.) According to Ambac, EMC made various representations and warranties regarding the nature and quality of the underlying loans contained in the securities, including that "the loans were not originated through improper means (e.g., fraud, error, omission, misrepresentation, gross negligence, or similar occurrence)." (Id. ¶¶ 1, 3.) Ambac alleges that it has compensated numerous insurance claims because loans that EMC

1

securitized have defaulted at an "extraordinary rate" as a result of EMC breaching these representations and warranties. (Id. ¶ 7.)

American Home originated approximately 3,227 of the loans contained in securities that EMC issued and that Ambac insured. American Home is not a party to Ambac's lawsuit against EMC.

### B.     Protective Order

On December 19, 2008, Judge Berman so ordered a "confidentiality stipulation and protective order." (Protective Order, Brooks Decl. (Docket Entry #3) Ex. 16.) The order expressly applies to information and documents disclosed by nonparties and to disclosures made in response to subpoenas duces tecum. The Protective Order states that disclosures of "nonpublic personal identifiable information relating to borrowers and/or consumers" made pursuant to its terms comply with the Gramm-Leach-Bliley Act. Under the Protective Order, a producing party may designate materials as "confidential," and thereby limit dissemination of those materials to the parties and individuals litigating the case. The Protective Order also prevents any party from using any information received from another party in any business, competitive, or governmental purpose, and from using it for any other action or proceeding. In addition, the Protective Order includes a claw-back provision for inadvertent disclosures of privileged or protected materials.

### C.     American Home Subpoena

On July 10, 2009, Ambac served American Home with a subpoena duces tecum. American Home, which is currently in bankruptcy liquidation proceedings, responded with blanket objections. Ambac now seeks an order compelling American Home to produce documents that fall into four categories: "(1) Documents concerning repurchases or breaches of

representations and warranties for the loans in the [securities]; (2) Risk management or quality control documents reflecting any findings of the fraud or borrower misrepresentation; (3) Underwriting guidelines corresponding to the loans in the [securities]; (4) Loan origination files (to the extent not maintained by EMC in the course of EMC's purchase of the loans from the originator)."[1] (Ambac Mem. of Law (Docket Entry # 2) 3-4.)

### D. Available Documents

According to a motion that American Home filed in Bankruptcy Court for the District of Delaware, American Home has approximately 10,000 boxes of documents at its headquarters in Melville, New York. (Brooks Decl., Ex. 5 at ¶ 16.) American Home asserts that it shipped these materials from its outlying offices to its Melville headquarters before terminating its origination business. In its opposition, American Home states that it never catalogued or inventoried these materials and does not know their contents. But in its motion before the bankruptcy court, American Home sought permission to destroy 4,559 boxes that it said contain the following categories of documents: "(1) broker packages; (2) construction lending; (3) corporate real estate; (4) employee desk contents; (5) Great Oak storage; (6) payroll files; (7) department reports; (8) risk management vendor files; and (9) employee time and expense reports."[2] (Id. ¶ 17.) American Home also stated that it maintains documents in the following categories: "(1) accounting records; (2) desk contents of [its] executives; (3) human resource files; (4) legal files; (5) money room/wire documentation; (6) treasury files; (7) documentation relating to [an] acquired mortgage company, Waterfield; and (8) documents relating to shortfall transactions."

---

[1] Ambac also subpoenaed a fifth category of documents: communications with EMC regarding the quality of the loans in the securities. Because Ambac has not yet exhausted the meet and confer process regarding this fifth category, Ambac does not seek an order compelling their production. In its motion, Ambac also sought electronic loan files for mortgage loans that American Home originated. American Home produced these materials and the issue is now moot.

[2] According to Ambac, American Home withdrew its motion seeking permission to destroy the documents.

3

(Id. ¶ 17 n.2.) According to American Home, it identified these categories by "spot-checking" some of the boxes.

Ambac requests an order permitting it to inspect American Home's remaining hard-copy documents at American Home's Melville location. Ambac also seeks an order compelling American Home to provide any indices that it may have for these documents.

## II. DISCUSSION

### A. Legal Standard

Under Rule 26(b)(1), any party may seek discovery of "nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Subject to Rule 26(b)(1)'s relevancy requirement, Rule 45 permits a party to issue a subpoena commanding a responding party to, inter alia, "permit inspection, copying, testing, or sampling" of "documents, electronically stored information, or tangible things." Fed. R. Civ. P. 45(a)(1)(d); see Warnke v. CVS Corp., 265 F.R.D. 64, 65 (E.D.N.Y. 2010). The responding party must produce subpoenaed documents "as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." Fed. R. Civ. P. 45(d)(1)(A).

If a subpoenaed party objects, the requesting party "may move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(i). Under Rule 34(c), "a nonparty may be compelled to produce documents and tangible things or to permit an inspection" as provided in Rule 45. Fed. R. Civ. P. 34(c). But an order under this subsection "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii). The court must ensure that "[a]

party or attorney responsible for issuing and serving a subpoena [takes] reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1).

### B. Relevance and American Home's Burden

The four categories of documents that Ambac seeks are relevant to its claims in its action pending against EMC. Ambac claims that EMC misrepresented the nature and quality of the loans that it securitized. The requested documents, relating to loan applications, underwriting criteria, quality control reviews, and repurchase requests, may establish differences between EMC's representations regarding the underlying loans that American Home originated and EMC securitized and the actual nature and quality of those loans. American Home's "spot-check" indicates that some of these documents may be found in its warehoused boxes.

On the issue of burden, American Home asserts that permitting Ambac to inspect its boxed documents would be unduly burdensome in light of American Home's minimal staff and voluminous, unorganized collection of documents. Because it is in liquidation, American Home claims that it lacks the sufficient staff to search for responsive documents or to monitor an inspection undertaken by Ambac. Ambac, however, has offered to have its attorneys inspect American Home's documents, at Ambac's expense, and to pay a low-level employee from American Home to monitor its inspection. In light of Ambac's concessions, American Home's cost-based objections are without merit. Ambac has offered to shoulder most of the costs that American Home would have to expend in responding to the subpoena.

American Home also asserts that some of the documents contained in its boxes may be privileged, confidential, proprietary, or contain private consumer information. Because American Home claims that it does not know exactly what documents are contained in the boxes,

it has not asserted any particular protection over any particular document. American Home nonetheless proposes that a third party review its documents, at Ambac's expense. In light of Judge Berman's Protective Order, American Home's concern is misplaced. Judge Berman's order protects any documents from dissemination or use beyond the parties in Ambac's lawsuit against EMC, protects confidential documents from dissemination beyond necessary parties and individuals, and includes a claw-back provision for privileged documents that are inadvertently disclosed. Rule 45(d)(2)(B) also provides subpoenaed parties the ability to claw back protected materials that are inadvertently disclosed. As ordered below, Ambac must provide American Home with copies of all the documents that it copies and removes from American Home's facility. Accordingly, American Home's ability to seek the protections contemplated by Judge Berman's order and Rule 45's claw-back adequately protect American Home's privileged or otherwise sensitive documents.

## III. CONCLUSION

For the foregoing reasons, Ambac's motion to compel is GRANTED. American Home must provide Ambac with any indices that it has for the documents that it identified in its motion before the bankruptcy court. American Home is also ordered to permit Ambac to inspect the documents contained in the boxes that it identified in its motion before the bankruptcy court. At its own expense, Ambac may remove and copy documents that are responsive to its subpoena. Ambac must then return the original documents to where they were found and provide additional copies to American Home with an accompanying description of the box in which they were located. American Home may then seek any appropriate protections under Judge Berman's Protective Order or the Federal Rules of Civil Procedure. And, as offered, Ambac must

compensate a low-level American Home employee or a security guard to monitor its inspection, should American Home request such monitoring.

If the parties encounter any unanticipated difficulties in complying with this order, they may advise the court by letter, with notice to opposing counsel.

SO ORDERED.

                                                       s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
       July _8_, 2010

/NICHOLAS G. GARAUFIS  
/ United States District Judge